Kristine M. Larsen (9228)
Jascha K. Clark (16019)
Brittany J. Merrill (16104)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Telephone:  (801) 532-1500
Facsimile: (801) 532-7543
E-mail:  klarsen@rqn.com
E-mail:  jclark@rqn.com
E-mail:  bmerrill@rqn.com

*Attorneys for Receiver, Maria E. Windham*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                     Plaintiff,<br>     vs.<br><br>MARQUIS PROPERTIES, LLC, a Utah Limited Liability Company, CHARD DEUCHER, an individual, and RICHARD CLATFELTER, an individual,<br><br>                     Defendants,<br><br>JESSICA DEUCHER, an individual,<br><br>                     Relief Defendant<br><br>     And<br><br>HODGES HOLDING, LLC, and U.S. BANK NATIONAL ASSOCIATION,<br><br>                     Intervenors. | **RECEIVER'S THIRD INTERIM FEE APPLICATION FOR SERVICES RENDERED FROM JANUARY 1, 2018 THROUGH MARCH 31, 2018**<br><br>Case No. 2:16-cv-00040-JNP<br><br>Judge: Hon. Jill N. Parrish |

Maria E. Windham, the Court-appointed receiver (the "Receiver"), acting through counsel Ray Quinney & Nebeker, P.C., respectfully submits this Receiver's Third Interim Fee Application for Services Rendered from January 1, 2018 through March 31, 2018.

I.     **BACKGROUND REGARDING APPLICATION**

On January 19, 2016, the Securities and Exchange Commission ("SEC") filed suit against Chad Deucher ("Deucher") and Marquis Properties, LLC ("Marquis Properties") (collectively, the "Defendants") and others, alleging Defendants were involved in an "ongoing offering fraud and Ponzi scheme." On the motion of the SEC, the Court entered an asset freeze on January 20, 2016 (the "Asset Freeze Order") that required that all assets and books and records of the Defendants be preserved and frozen from further disposition.

During the proceedings in this case, it became evident that appointment of a receiver was necessary, even though the Defendants' Accounting and preliminary investigation by the SEC suggested there were few assets remaining in Defendants' possession. (*See, e.g.*, Dkt. No 34.) On January 18, 2017, almost a year after the Court's entry of the Asset Freeze Order, the Court entered the Order appointing Maria E. Windham, a lawyer and partner at the law firm Ray Quinney & Nebeker P.C., as Receiver (the "Receivership Order"). As Receiver, Ms. Windham is ordered to marshal and preserve certain assets of the Defendants that were frozen by the January 20 Asset Freeze Order, plus all additional recoverable assets, which are defined as "assets of any other entities or individuals that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; and/or (c) were fraudulently transferred by the Defendants" (the "Receivership Estate"). (*See* Receivership Order, Dkt. No. 110, at 1-2; Amended Order, Dkt. No. 182.)

The Court approved lawyers at the law firm of Ray Quinney & Nebeker to act as Counsel to the Receiver, (Dkt. No. 117), and Deiss Law to act as conflicts counsel (Dkt. No. 200). The law firm of Ray Quinney & Nebeker reduced the rate ordinarily charged by Ms. Windham to $250/hr., and has charged the services of all counsel at a unified rate of $285/hr. These rates reflect significant discounts from the rates regularly charged by the partners who have performed services as Receiver and counsel to the Receiver. Ray Quinney and Nebeker also reduced the rate charged for paralegal services to $135/hr. and provided other discounts and complied with limitations on billing as set forth in the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission. Moreover, Ray Quinney & Nebeker and the partners working on the case, including the Receiver, have undertaken substantial costs and risk of nonpayment for the benefit of the receivership estate while there are insufficient liquid assets in the bank accounts by fronting expenses and investing the Receiver's time and counsel's time required to manage a complex receivership and seek to prevent continuation of the fraud. Despite this risk, Ray Quinney & Nebeker has not charged a contingency fee or otherwise increased its rates to reflect the risk of nonpayment. Deiss Law has also charged the same unified rates and has undertaken risk of nonpayment for the benefit of the receivership estate without charging a contingency fee or otherwise increasing its rates to reflect risk of nonpayment.

This fee application covers work by the Receiver and her counsel at the law firms of Ray Quinney & Nebeker, P.C. and Deiss Law performed during the three month period from January 1, 2018 through March 31, 2018. During this time period, the receivership benefited from the Receiver's consultation at substantially reduced rates with her lead counsel, Kristine Larsen, and

with a variety of legal specialists, as necessary. For example, the Receiver consulted with the following additional partners of Ray Quinney and Nebeker concerning matters in their expertise: Elaine Monson, a specialist in bankruptcy matters and abandonment of real property, Sam Lambert, an expert in matters of taxation, and Kelly Applegate, a tax attorney/CPA, and Justin Toth, a senior litigation partner with significant experience in document collection and preservation issues. In addition, administrative professionals provided extensive and valuable assistance to the Receiver without charge. From January 1, 2018 through March 31, 2018, the following professionals at Ray Quinney & Nebeker performed services for the Receivership Estate at the identified rates:

- Receiver @ $250/hr.
    - Maria E. Windham

- Counsel for the Receiver @ 285/hr.
    - Kristine Larsen
    - Matthew R. Lewis
    - Elaine A. Monson
    - Samuel Lambert
    - Kelly Applegate
    - Justin T. Toth
    - Jascha K. Clark
    - Brittany J. Merrill
    - Carol Funk

- Paralegal @ $135/hr.
    - Carrie Hurst
    - Susan Seder
    - Michelle Somers
    - Troy Mollerup[1]

---

[1] Troy Mollerup is a Ray Quinney & Nebeker staff attorney who specializes in ESI collection, processing, and review. His assistance on this matter regarding collection and processing of ESI has been reduced to the $135/hr paralegal rate for this case.

Additionally, from January 1, 2018 through March 31, 2018, the following professionals at Deiss Law performed services for the Receivership Estate under an agreement to charge the identified rates:

- Counsel for the Receiver @ $285/hr.
    - Diana Bradley
    - Wes Felix

- Paralegal @ $135/hr.
    - Zach Abend

## II.     CASE STATUS

It is well-established that the Defendants operated a Ponzi scheme. In 2016, Deucher was criminally indicted for the federal crime of securities fraud. Deucher executed a Statement by Defendant in Advance of Plea of Guilty and Plea Agreement in his federal criminal case, which was accepted by the Court, on April 19, 2017. As part of the factual statement in support of his guilty plea, Deucher admitted that "beginning in and around March of 2010 and continuing to around February of 2016," he "solicited approximately 170 investors to invest approximately $16,000,000 in various real-estate based securities offerings secured with promissory notes." *United States v. Deucher*, Case No. 2:16-CR-189-DN, Dkt. No. 50 (Statement of Defendant in Advance of Plea of Guilty and Plea Agreement Pursuant to Fed. R. Crim. P. 11(c)(1)(C) Report dated April 19, 2017.) Deucher further admitted that "in relation to those investments, without authority or knowledge of the investors, I used investor funds to pay other investors and I used the money for my own personal benefit and living expenses." (*Id.*)

As described in detail in the Receiver's Fourth Status Report filed March 2, 2018, the Receiver has not been able to locate significant liquid or physical assets in the Receivership Defendants' possession with which to pay the costs of the receivership.  However, the Receiver believes the receivership estate has legal claims of significant value against certain third parties who received fraudulent transfers from Marquis Properties.  The Receiver's claims include more than $1 Million in claims for return of unlawful commissions paid to the transferees.  She also has significant claims against insiders, other transferees who promoted investments in the Marquis Properties Ponzi Scheme, and against net winners who received significantly more from Marquis Properties than the amounts they invested in good faith.  The Receiver anticipates that payment of receivership expenses and any return to investors will be paid through resolution of her legal claims against the various transferees who received fraudulent transfers.

The Receiver is currently pursuing return of fraudulent transfers from various transferees through negotiation and, if necessary, through litigation.  Between January 1, 2018 and March 30, 2018, the Receiver settled ten of her demands for repayment of fraudulent transfers pursuant to which the settling transferees agreed to settlements that, aggregated, total **$295,528.77**.  She settled nine of those demands either on the terms of the pre-litigation standardized settlement agreement previously approved by the Court, which offers transferees favorable settlement terms for pre-litigation settlement of claims, or pursuant to her authority to resolve demands valued at $25,000 or less. (See Dkt. Nos. 156, 178, 206).  She settled the remaining claim--her claim for return of charitable donations--on the confidential settlement terms approved by the Court Order dated January 1, 2018 (Dkt. No. 206). By March 31, 2018, the Receiver filed eight lawsuits, which together state claims for return of more than 3.5 Million dollars.  The Receiver was also in

active settlement negotiations with multiple other transferees who signed tolling agreements to allow pre-litigation settlement discussions to continue.

By March 31, 2018, the Receiver had received $275,783.77 in settlement payments toward the pre-existing settlement agreements. Her negotiation of settlements of her claims was ongoing. Subtracting the Court-ordered payment of professional fees and expenses, which the Receiver paid pursuant to the Court order granting the Receiver's First Interim Fee Application, the receivership account established by the Receiver bore a balance of **$107,783.79** on March 31, 2018. Attached hereto as "Exhibit A" is a copy of the SEC's Standardized Fund Accounting Report ("SFAR") for the period from January 1, 2018 to March 31, 2018, which provides detail concerning the deposit of settlement funds, payment of fees and expenses, and other transactions in the Receivership Account.

**1. Fees of Receiver and Counsel**

The fees for services rendered by the Receiver and by counsel at the law firm of Ray Quinney & Nebeker and Deiss Law during the reporting period from January 1, 2018 through March 31, 2018 are detailed in the invoices attached hereto as "Exhibit B."[2] The majority of the fees incurred by the Receivership Estate were incurred for investigation of assets and the Receiver's legal claims, pursuit of the Receiver's claims, and negotiation and settlement of the Receiver's claims. The Receiver and her counsel expended significant time and effort to file suit or obtain tolling agreements from transferees and to continue her investigation and pursuit of the assets and legal claims of the Receivership Defendants. The Receivership also incurred necessary fees to pay the Receiver and her counsel at Ray Quinney & Nebeker to administer the

---

[2] The Receiver is filing herewith a motion to seal the contents of the billing statements identified in Exhibit B. Pending the ruling on that Motion, Exhibit B is redacted from the publicly filed document.

receivership and to abandon real property in a manner that protects the Receivership estate.[3] Finally, the Receiver and her counsel at Ray Quinney & Nebeker again found it necessary to investigate further violations of the asset freeze by persons related to or in business with Chad Deucher and to provide information regarding those violations to the SEC, which has expressed an intent to file a motion for order to show cause with the Court relating to asset freeze violations.

In consideration of these services, the Receiver requests the Court approve payment of fees for the services performed by the Receiver from January 1, 2018 through March 31, 2018 in the amount of **$59,875.00**. The Receiver further requests that the Court approve payment of fees for services performed by counsel during the same period in the amount of **$102,319.05** ($93,880.50 to Ray Quinney & Nebeker and $8,438.55 to Deiss Law). Excluding the 20% holdback the Court applies to fee awards, the Receiver requests that the Court approve payment toward the Receiver's fees for the period from January 1, 2018 through March 31, 2018 in the amount of **$47,900**, and toward attorneys' fees for the same period in the amount of **$81,855.24** ($75,104.40 to Ray Quinney & Nebeker, PC, and $6,750.84 to Deiss Law).

**2. Administrative Expenses**

Throughout the Receiver's administration of the Receivership Estate, the Receiver has been very sensitive to the lack of liquid assets. Nonetheless, it was necessary for the Receiver and her counsel to pay certain costs and expenses to carry out the Receiver's duties. In this

---

[3] The Receiver considers abandonment of properties not only necessary to the resolution of the receivership, but also an important service to communities where the distressed properties are located and to potential victims of continuing fraud. The Receiver's investigation found that these properties remaining titled to Marquis Properties continued to be used in fraudulent schemes by Chad Deucher and others during the asset freeze period and even during the pendency of the receivership and that the same properties were nuisances and hazards in the communities where they were located. (*See* the Receiver's Third Notice of Violation.)

Third Interim Fee Application, the Receiver therefore requests reimbursement of the expenses identified in the attached Exhibit "C", incurred between January 1, 2018 and March 31, 2018, which include but are not limited to the following:

- Fees for filing Complaints in federal court;
- Fees for service of Complaints and subpoenas;
- Court reporter fees, copies of deposition transcripts, and required witness fees;
- Costs paid to Cicayda, LLC to perform necessary forensic imaging and processing of computer and cell phone data and hosting services to make the records of Marquis Properties available for review in a searchable format;
- Title search fees and recording fees relating to investigation and abandonment of real properties; and
- Copying, postage, and parking expenses.

The sum of the expenses paid by the law firm of Ray Quinney & Nebeker from January 1, 2018 through March 31, 2018, for which the Receiver seeks reimbursement equals $13,768.39. The sum of the expenses paid by Deiss Law from January 1, 2018 through March 31, 2018 for which the Receiver seeks reimbursement equals $1,200. In total, the Receiver requests that the Court approve reimbursement of expenses paid by counsel during the same period in the amount of $14,968.39. If the Court applies a 20% hold back to expenses, the Receiver should be authorized to pay **$11,974.71** from the Receivership account as reimbursement of expenses incurred between January 1, 2018 through March 31, 2018.

### 3. Amount of Unencumbered Funds

Funds in the Receivership Account as of March 31, 2018 amount to $107,783.79. The unpaid Receiver's fees, attorneys' fees and expenses incurred through March 31, 2018 to administer the Receivership presently exceed the funds recovered.

### 4. Summary of Administration of Funds

As of March 31, 2018, $249,583.50 had been collected into the Receivership account, primarily from settlements and disposition of office furnishings. As of the same date, $175,678.51 has been disbursed from the account for (1) the Court-ordered payment pursuant to the Receiver's First Interim Fee Application and (2) a distribution to the landlord of a share of the proceeds of the auction of furnishings held by the landlord pursuant to a settlement of the Receiver's and landlord's competing claims concerning those furnishings, leaving $107,783.79 in the account. The Court has not ruled on the Receiver's Second Interim Fee Application or on this Receiver's Third Interim Fee Application.

### 5. Summary of Creditor Claims Proceedings

The Receiver has not requested and the Court has not ordered creditor claims proceedings to begin. The Receiver will seek the Court's permission to institute creditor claims proceedings when she has collected assets sufficient to cover the costs of collecting settlements and administering a claims process, which the Receiver currently estimates will be triggered when (and if) the Receiver recovers $1,000,000.

### 6. Description of Receivership Estate Assets

- The Receiver has determined that the most valuable assets of the Receivership Estate are voidable transfer/fraudulent transfer claims against third persons. The Receiver has sent demand letters or otherwise asserted $5 million to $6 million in claims.

- The Receiver has confirmed that several Lear Jets identified by the Defendants as assets of the Receivership Estate held in the name of Marquis Air, LLC were transferred away or repossessed prior to appointment of the Receiver.

- The Receiver has identified and investigated the value of distressed real properties that remained within the Receivership Estate at the time of the appointment of the Receiver. She concluded that none of the real property assets that remained in the receivership estate are of sufficient value to provide a meaningful recovery to the Receivership Estate, and they present significant liabilities. Therefore, the Receiver abandoned the properties with Court approval. After filing her abandonment motion, the Receiver identified one additional bare lot in Marquis Properties' possession that will cost more to sell or to abandon than the value of the property, which is estimated to be approximately $500. The Receiver was recently notified that this property is subject to an imminent tax sale. Accordingly, the Receiver does not presently intend to file a motion to abandon that single low-value lot and to allow the tax sale process to proceed.

- Only a few items of personal property are believed to remain in the Receivership Estate. The Receiver continues to investigate and discover evidence that personal property previously disclosed by the Defendants was auctioned or pawned in violation of the Court's Asset Freeze Order from January 16, 2016 through December 2017. Recently, a fake Rolex watch was physically returned to the Receiver by a recipient of fraudulent transfers. That watch is held in the Receiver's offices. The Receiver is also aware of a handgun that was fraudulently transferred to a transferee. She instructed the transferee to hold it in safekeeping as a frozen asset until receipt of further directions from the Receiver.

- On October 27, 2017, the Receiver deposited into the receivership account the proceeds of her liquidation of the contents of a storage shed belonging to Marquis Enterprises' prior land lord, Steve Black. The Receiver and Mr. Black previously agreed that, although they had competing claims to the assets, they would preserve the value of the furnishings kept in the storage shed from mounting storage fees by liquidating those assets prior to resolution of their dispute. Therefore, the proceeds of the liquidation (performed by Statewide Auction Company) equaling $6,034.72 were retained by the Receiver and deposited into the receivership account subject to resolution of the Receiver's ongoing negotiations with Mr. Black regarding his claim to the same furnishings. The Receiver has now resolved that negotiation, pursuant to which she returned $1,206.94 of the proceeds by check made out from the receivership account to Mr. Black.

### 7. Description of Unliquidated Claims

Through the last quarter of 2017 and the first quarter of 2018, the Receiver investigated and asserted approximately 100 demands for repayment of fraudulent transfers. In response, many of the transferees entered into tolling agreements to allow time for the Receiver to obtain evidence of any defenses raised by the transferees, including any assertions of inability to pay a judgment, and then to negotiate with the transferees concerning settlement. The Receiver initially obtained tolling agreements on more than $2 million dollars in claims. By March 31, 2018, the Receiver had filed seven lawsuits with these initial claim amounts:

| Case | Minimum Damages Claimed |
|---|---:|
| *Windham v. Allen, et al.*, 2:18-cv-00054-JNP | $1,064,281 |
| *Windham v. Corey, et al.*, 2:18-cv-00065-EJF | $500,000 |
| *Windham v. Norville, et al.*, 2:18-cv-00057-EJF | $1,061,175 |
| *Windham v. Ringer, et al.*, 2:18-cv-00060-BCW | $121,320 |
| *Windham v. Shults, et al.*, 2:18-cv-00062-PMW | $300,000 |
| *Windham v. Snyder, et al.*, 2:18-cv-00063-BCW | $200,000 |
| *Windham v. Real Estate Investor Support, LLC, et al.* 2:18-cv-00059-BCW | $108,700 |
| *Windham v. Zurixx, LLC, et al.* 2:18-cv-00056-BCW | $214,500 |

During the period from January 1, 2018, she resolved some of these claims, and some of her claims were added to the lawsuits described above.

Depending upon continuing negotiations with persons who have signed tolling agreements, and anticipated negotiations with several potential defendants against whom the Court has authorized suit, but against whom the Receiver has not yet asserted a demand, the Receiver anticipates that during the second quarters of 2018 she will file one or more additional lawsuits and/or amend the above lawsuits to add additional claims. Altogether, the claims may amount to $4 million or $5 million in claims asserted by the Receiver

## 8. Current and Previous Billings

This is the third fee application submitted by the Receiver to the Court. The total fees billed for the period from 1/1/2018 through 3/31/2018 for the Receiver ($59,875.00) and for counsel for the Receiver ($**102,574.05**) are broken down by timekeeper as follows:

| Person Billing | Hourly Rate | Hours Billed | Total Fees Billed 1/1/2018-3/31/2018 |
|---|---|---|---|
| **Receiver** | | | |
| Maria E. Windham | $250 | 239.5 | $59,875.00 |
| **RQN Attorney Fees** | | | |
| Matthew R. Lewis | $285 | 12.7 | $3,619.50 |
| Kristine M. Larsen | $285 | 11.0 | $3,135.00 |
| Justin T. Toth | $285 | 10.7 | $3,049.50 |
| Samuel A. Lambert | $285 | 3.7 | $1,054.50 |
| Elaine A. Monson | $285 | 31.6 | $9,006.00 |
| Jascha K. Clark | $285 | 143.6 | $40,926.00 |
| Kelly J. Applegate | $285 | 5.0 | $1,425.00 |
| Brit Merrill | $285 | 30.0 | $8,550.00 |
| Carol A. Funk | $285 | 19.1 | $5,443.50 |
| Troy Mollerup | $135 | 4.5 | $607.50 |
| Susan Seder | $135 | 108.0 | $14,580.00 |
| Michelle Somers | $135 | 0.10 | $13.50 |
| Carrie Hurst | $135 | 18.3 | $2,470.50 |
| | **Subtotal** | | $93,880.50 |
| **Deiss Law Attorney Fees** | | | |
| Wess Felix | $285 | 3.2 | $912.00 |
| Diana Bradley | $285 | 25.4 | $7,239.00 |
| Zach Abend (paralegal) | $135 | 2.13 | $287.55 |
| | **Subtotal** | | $8,438.55 |
| **Total – Receiver's Fees** | | | $59,875.00 |
| **Total - Attorneys Fees** | | 668.53 | $102,319.05 |
| **Total – Expenses** (RQN: 13,768.39 + Deiss Law: $1,200) | | | 14,968.39 |
| **Total Billing 1/1/18-3/1/18** | | | $180,439.94 |

Excluding the 20% holdback the Court applies to fees, the Court should approve payment toward the Receiver's fees for the period from January 1, 2018 through March 31, 2018 in the amount of

13

**$47,900**, attorneys' fees for the same period in the amount of **$82,059.24,** and fees in the amount of **$11,974.71.**

Combined with the unpaid balances from the Receiver's Second Interim Fee Application (excluding all holdbacks), the Receiver requests that the Court approve payment of the outstanding Receiver's fees in the amount of **$82,760.00** plus outstanding Attorneys' Fees in the amount of **$111,651.24,** and expenses in the amount of **$18,357.75.** Although these amounts together exceed the March 31, 2018 receivership account balance of 107,783.79, subsequent settlement payments awaiting court approval should soon provide the funds necessary to cover the requested payments.  *See* Motion for Approval of Settlement Agreements at Dkt. No. 233.

The following tables provide a more detailed description of the fee requests submitted to the Court, amounts previously paid, and the accumulating holdback balances.

| **Receiver's Fees** | | | | | | |
|---|---|---|---|---|---|---|
| Dates | Amount Billed | 20% Holdback | Amount Due | Amount Paid by Court Order | Balance Excluding Holdback | Accumulated Holdback Balance |
| 1/2017-6/2017 | $55,225.00 | $11,045.00 | $44,180.00 | | $44,180.00 | $11,045.00 |
| 1/2018 | | | | $44,180.00 | 0 | $11,045.00 |
| 7/2017-12/2017 | $43,575.00 | $8,715.00 | $34,860.00 | | $34,860.00 | $19,760.00 |
| 1/2018-3/2018 | $59,875.00 | $11,975.00 | $47,900.00 | | $82,760.00 | $31,735.00 |

| **Attorney's Fees** | | | | | | |
|---|---|---|---|---|---|---|
| Dates | Amount Billed | 20% Holdback | Amount Due | Amount Paid by Court Order | Balance Excluding Holdback | Accumulated Holdback Balance |
| 1/2017- | $147,030.00 | $29,406.00 | $117,624.00 | | $117,624.00 | $29,406.00 |

14

| Dates | | | | $117,624.00 | 0 | $29,406.00 |
|---|---|---|---|---|---|---|
| 6/2017 | | | | | | |
| 1/2018 | | | | $117,624.00 | 0 | $29,406.00 |
| 7/2017-12/2017 | $36,990.00 | $7,398.00 | $29,592.00 | | $29,592.00 | $36,804.00 |
| 1/2018-3/2018 | $105,596.55 | $21,119.31 | $84,477.24 | | $111,651.24 | $57,318.81 |

| Expenses | | | | | | |
|---|---|---|---|---|---|---|
| Dates | Amount Billed | 20% Holdback | Amount Due | Amount Paid by Court Order | Balance Excluding Holdback | Accumulated Holdback Balance |
| 1/2017-6/2017 | $13,874.51 | $2774.90 | $11,099.61 | | $11,099.61 | $2,774.90 |
| 1/2018 | | | | $11,099.61 | 0 | $2,774.90 |
| 7/2017-12/2017 | $7,978.80 | $1,595.76 | $6,383.04 | | $6,383.04 | $4,370.66 |
| 1/2018-3/2018 | $14,968.39 | $2,993.68 | $11,974.71 | | $18,357.75 | $7,364.34 |

9. **Standardized Fund Accounting Report**

The SEC's Standardized Fund Accounting Report ("SFAR") for the first quarter of 2018 is attached hereto as Exhibit A.

III. **CERTIFICATION OF RECEIVER**

I, Maria E. Windham, the Receiver and applicant hereby certify as follows:

(a) I have read the above Application;

(b) to the best of my knowledge, information and belief formed after reasonable inquiry, the above Application and all fees and expenses therein are true and accurate and comply with the Billing Instructions, except that I did not provide the Application to the SEC 30 days prior to

the date the Application is due to be filed with the Court.

(c) all fees contained in the Application are based on the rates listed in the fee schedule included herein and such fees are reasonable;

(d) I have not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission); and

(e) in seeking reimbursement for a service which the I justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), I request reimbursement only for the amount billed to me by the third party vendor and paid by me to such vendor.  To the extent such services were performed by me, I certify I am not making a profit on such reimbursable service.

DATED this 15th day of May, 2018.

*/s/ Maria E. Windham*
By Maria E. Windham, Receiver

RESPECTFULLY SUBMITTED this 29th day of May, 2018.

RAY QUINNEY & NEBEKER P.C.

*/s/ Brittany J. Merrill*
Kristine M. Larsen
Jascha K. Clark
Brittany J. Merrill
*Attorneys for the Receiver, Maria E. Windham*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of May, 2018, I caused a true and correct copy of the foregoing **RECEIVER'S THIRD INTERIM FEE APPLICATION FOR SERVICES RENDERED FROM JANUARY 1, 2018 THROUGH MARCH 31, 2018** to be filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Amy Oliver
SECURITIES AND EXCHANGE COMMISSION
351 S WEST TEMPLE STE 6.100
SALT LAKE CITY, UT 84101
Email: olivera@sec.gov

Cheryl M. Mori
SECURITIES AND EXCHANGE COMMISSION
351 S WEST TEMPLE STE 6.100
SALT LAKE CITY, UT 84101
Email: moric@sec.gov

Daniel J. Wadley
SECURITIES AND EXCHANGE COMMISSION
351 S WEST TEMPLE STE 6.100
SALT LAKE CITY, UT 84101
Email: wadleyd@sec.gov

Matthew R. Howell
FILLMORE SPENCER LLC
3301 N UNIVERSITY AVE
PROVO, UT 84604
Email: mhowell@fslaw.com

Justin D. Heideman
HEIDEMAN & ASSOCIATES
2696 N UNIVERSITY AVE STE 180
PROVO, UT 84604
Email: jheideman@heidlaw.com

Armand J. Howell
HALLIDAY WATKINS & MANN PC
376 E 400 S STE 300
SALT LAKE CITY, UT 84111
Email: armand@hwmlawfirm.com

Robert K. Hunt
robert_hunt@fd.org

And via email on the following non-CM/ECF participant:

Richard Clatfelter
rick@rickclatfelter.com
Pro Se

/s/ Liz Beidoun

## Index of Exhibits

Exhibit A: SEC's Standardized Fund Accounting Report ("SFAR") for the period from January 1, 2018 to March 31, 2018.

Exhibit B: Fees for services rendered by the Receiver and counsel at the law firm of Ray Quinney & Nebeker and by counsel at the law firm of Deiss Law during the reporting period from January 1, 2018 through March 31, 2018 **\*\*FILED UNDER SEAL\*\***

Exhibit C: Expenses paid by the law firm of Ray Quinney & Nebeker from January 1, 2018 through March 31, 2018

1451754